COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JESSIE ALVAREZ,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00357-CR



Appeal from


 409th District Court


of El Paso County, Texas


(TC # 20050D00182)




O P I N I O N



 Jessie Alvarez pled guilty to possession of a controlled substance, and the trial court assessed
punishment at thirteen months' confinement in the state jail facility. He appeals the order denying
his motion to suppress. For the reasons that follow, we affirm.

FACTUAL SUMMARY


 During the morning hours of October 27, 2004, Officer Ted Saiz was on patrol in the 4500
block of Vulcan. The area has a high degree of prostitution, drug, and criminal activity. Officer Saiz
observed a vehicle with a male occupant parked along the side of a trailer park. The vehicle caught
the officer's attention because it was parked on a road where no other vehicles were located. Officer
Saiz made a U-turn to pull up behind it. He saw Appellant walk from the trailer park, approach the
parked vehicle, and speak with the occupant. He then walked back to the trailer and the driver of
the car drove into the parking lot.

 Officer Saiz recognized Appellant from a picture he had seen during his off duty employment
at an Albertson's grocery store. Another off-duty officer who worked in the store told him to watch
out for Appellant because he was a known methamphetamine user and cooker, and he had
previously been arrested in the store for stealing ephedrine. Ephedrine can be used to produce
methamphetamine. 

 At that point, Appellant walked from the trailer space toward Officer Saiz. Once Appellant
reached the street, the officer pulled up and stopped him. When asked what he was doing, Appellant
said he was visiting some people in space 305. Appellant appeared nervous, was sweating profusely
although it was not hot, spoke rapidly, and slurred his speech.

 Officer Saiz told Appellant he would do a pat down search. Appellant placed his hands on
the police car and Saiz asked him whether he had any weapons or needles. Appellant said he had
a needle in his pocket. Officer Saiz found a sunglass case that contained a syringe and a ziplock
baggie with yellow substance. Nothing was in the syringe, but the cap had a piece of cotton that was
moist and yellow in color. Officer Saiz suspected the yellow substance to be methamphetamine.

 Following the search, Officer Saiz took Appellant into custody and they both went back to
space 305. The owner of the trailer consented to a search of the home. Appellant said that a
backpack near the door belonged to him. The officer took Appellant and the bag to the police
station. When he inventoried the bag, Saiz found hoses and another syringe with a moist piece of
cotton containing yellow liquid.

REASONABLE SUSPICION TO DETAIN


 Appellant raises one issue complaining that the trial court erred in denying the motion to
suppress because Officer Saenz did not have reasonable suspicion to detain him. (1) He contends he
was detained once the officer "stopped him." As a result of the unlawful detention, he argues that
Saiz conducted an unlawful search of his person, unlawfully seized his drugs, and unlawfully seized
and searched his backpack.

Standard of Review


 We review a trial court's ruling on a motion to suppress using the bifurcated standard of
review articulated in Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v.
State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). We do not engage in our own factual review of the trial court's decision
because the trial judge is the sole trier of fact regarding credibility and weight to be given to a
witnesses testimony. See State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); Romero v. State,
800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Almost total deference is given to the trial court's
ruling on questions of historical fact and application of law to fact questions that turn on an
evaluation of credibility and demeanor. Montanez v. State, 195 S.W.3d 101, 107 (Tex.Crim.App.
2006), citing Guzman, 955 S.W.2d at 89. A trial court's rulings on mixed questions of law and fact
that do not turn on the credibility and demeanor of witnesses are reviewed under the de novo
standard. Id.

 Where the trial court filed findings of fact and conclusions of law, the court's findings of fact
will not be disturbed on appeal absent an abuse of discretion. State v. Wood, 828 S.W.2d 471, 474
(Tex.App.--El Paso 1992, no writ); see also Cantu v. State, 817 S.W.2d 74, 77 (Tex.Crim.App.
1991)(trial court's findings should not be disturbed absent clear abuse of discretion). If the trial
court's findings are supported by the record then we are not at liberty to disturb them, and we will
only address the question of whether the trial court improperly applied the law to the facts. Wood,
828 S.W.2d at 474. A court's ruling regarding a motion to suppress will be upheld if the decision
made was based on any correct theory of law applicable to the case. Ross, 32 S.W.3d at 856.

When Was Appellant Detained?


 Because the point at which Appellant was initially detained is relevant to our analysis of
whether Officer Saiz possessed reasonable suspicion to detain him, we begin by determining when
Appellant was detained. There are three categories of interactions between officers and citizens:
encounters, investigative detentions, and arrest. State v. Perez, 85 S.W.3d 817, 819 (Tex.Crim.App.
2002). When an officer encounters a citizen, the officer is not required to have reasonable suspicion
because the citizen is under no compulsion to remain. Francis v. State, 922 S.W.2d 176, 178
(Tex.Crim.App. 1996). An encounter between an officer and a citizen does not violate the Fourth
Amendment as long as the person to whom questions are put remains free to disregard the officer's
questions and walk away. Francis, 922 S.W.2d at 178, citing United States v. Mendenhall, 446 U.S.
544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Officers "do not violate the Fourth
Amendment by merely approaching an individual on the street or in another public place, by asking
him if he is willing to answer some questions, by putting questions to him if the person is willing
to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such
questions." Perez, 85 S.W.3d at 819, citing Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382,
115 L.Ed.2d 389 (1991).

 Appellant argues he was seized before Officer Saiz questioned him since Saiz testified at the
hearing that he "stopped him."

 I then saw the Defendant come out by the vehicle, the trailer. I didn't see him exit
the door, but I saw him walk out of the space, and he started walking northbound
through the park towards my direction where I was on Atlas. 


 So when he got to Atlas, what I did is I was able to pull my vehicle up next to him,
I stopped him, and, of course, I knew who he was. I asked him what he was doing
there; he said he was visiting some people in space, I believe it was, 305. 


Based on the totality of circumstances, this did not constitute a seizure. An officer, like any other
citizen, is free to stop and ask questions of a fellow citizen. Hunter v. State, 955 S.W.2d 102, 104
(Tex.Crim.App. 1997); see also Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1324, 75
L.Ed.2d 229 (1983). The determining factor is whether a reasonable person would feel free to
disregard the officer and walk away. See Hunter, 955 S.W.2d at 104. A seizure occurs if the officer
communicates to a reasonable person that he is not free to decline the officer's requests or otherwise
terminate the encounter. Bostick, 501 U.S. at 439; see also Hunter, 955 S.W.2d at 104. A
reasonable person would have believed he was free to leave when Officer Saiz approached him. 
Consequently, we disagree with Appellant that at this point in time he was seized. To the contrary,
the seizure did not occur until after Officer Saiz questioned him. Appellant appeared nervous, he
was sweating profusely, stuttered his speech, and spoke quickly. Once the officer conducted the pat
down search, Appellant was seized. Johnson v. State, 912 S.W.2d 227, 235 (Tex.Crim.App.
1995)(the seizure of a citizen has not occurred until a reasonable person would believe he was not
free to leave and that person yielded to show of authority or was physically forced to yield).

Did Officer Saiz Have Reasonable Suspicion?


 Next, we address whether the investigatory detention was based on reasonable suspicion. 
An officer may conduct a brief investigatory detention--a "Terry stop"--when he has reasonable
suspicion to believe that an individual is involved in criminal activity. Balentine v. State, 71 S.W.3d
763, 768 (Tex.Crim.App. 2002); see also Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880-81,
20 L.Ed.2d 889 (1968). A temporary detention will be justified when the detaining officer has
specific articulable facts which, taken together with rational inferences from those facts, lead him
to conclude that the person detained actually is, has been, or soon will be engaged in criminal
activity. Balentine, 71 S.W.3d at 768.

 Although an officer cannot rely upon a mere hunch or suspicion of criminal activity to justify
a stop, an officer may draw upon his own experience and specialized training to make inferences
and deductions about the cumulative information. U.S. v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744,
750-51, 151 L.Ed.2d 740 (2002). A determination of reasonable suspicion must be based on
common sense judgments and inferences about human behavior. Illinois v. Wardlow, 528 U.S. 119,
125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). The reasonableness of a temporary detention is
based upon the totality of circumstances. Balentine, 71 S.W.3d at 768.

 Appellant contends the facts here are similar to Brown v. Texas and Ceniceros v. State. In
Brown, two police officers were patrolling an area with a high incidence of drug usage when they
observed the defendant and another man in an alley walking away from one another. Brown v. 
Texas, 443 U.S. 47, 48-49, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). The officers believed the two men
had intended to meet until the patrol car appeared. Id. at 49. One of the officers stopped the
defendant because the situation looked suspicious and because he had never seen him in that area
before. Id. at 49. The Supreme Court determined the detention was unlawful because the sole fact
that he was present in a neighborhood frequented by drug users did not, standing alone, provide a
sufficient basis for concluding the defendant was engaged in criminal conduct. Id. at 52.

 In Ceniceros, an officer was on patrol in an area with a number of recent burglaries when he
noticed four men standing together on the sidewalk. Ceniceros v. State, 551 S.W.2d 50
(Tex.Crim.App. 1977). After passing the men, the officer turned around and approached them. Id.
He noticed the defendant appeared to be shaking and nervous. Id. The officer asked to see
identification, and as the defendant was "thumbing through his wallet, a piece of tin foil and a pawn
shop ticket fell from it to the sidewalk." Id. The officer picked up the foil and found a brown
powdery substance which appeared to him to be heroin. Id. The defendant and the other men were
then arrested. Id. The Court of Criminal Appeals in its original decision determined the defendant's
constitutional rights were not violated because he was not stopped by the officer. Id. at 52. It was
not until the foil fell from the defendant's wallet that the officer was justified in making further
investigation. Id. at 51. On rehearing, the court determined the detention was unreasonable because
the officer initiated his investigation on the facts that there was a number of recent burglaries in the
area and the four men were standing together on the sidewalk intersection at 10:20 in the morning. 
Id. at 55. This was unreasonable due to the officer's unparticularized suspicion that the defendant
and his companions might in some way be connected with the recent burglaries. Id. at 55.

 Here, a fourteen year veteran of the police department, was on patrol in an area known for
criminal and drug activity. He saw Appellant walk up to a parked vehicle, lean over, and speak to
the occupant through the passenger side window. Saiz had prior knowledge Appellant was a known
meth user and had been arrested for stealing ephedrine. When Appellant walked back into the trailer
park, the vehicle followed him. When asked what he was doing in the trailer park, Appellant
appeared nervous, was sweating profusely, spoke very fast, and his speech was stuttered.

 Based upon the totality of circumstances, the court did not err in denying the motion to
suppress. While an individual's presence in a high crime area and nervousness alone are insufficient
to constitute reasonable suspicion, they are factors we can consider in determining whether 
reasonable suspicion existed. Wardlow, 528 U.S. at 124 (the fact that a stop occurred in a "high
crime area"is among the relevant contextual considerations in a Terry analysis, and nervous, evasive
behavior is also a pertinent factor in determining reasonable suspicion). We can also consider an
officer's knowledge of an individual's history of drug offenses. Coleman v. State, 188 S.W.3d 708,
717 (Tex.App.--Tyler 2005, pet. ref'd)(one of the three factors identified by officer that gave rise to
reasonable suspicion was the defendant's prior arrests for drug offenses); Powell v. State, 5 S.W.3d
369, 375 (Tex.App.--Texarkana 1999, pet. ref'd)(prior drug offenses and nervousness were factors
considered in determining whether post-citation detention was reasonable). And we can consider
the officer's observations of the vehicle and Appellant's interactions with the vehicle's occupant. 
 While individually these factors may not provide sufficient evidence of reasonable suspicion,
we do not consider them in isolation; we consider them based on the totality of circumstances.
Arvizu, 534 U.S. at 274-75 (a court's evaluation of listed factors in isolation does not take into
account the "totality of circumstances," and this type of divide and conquer analysis has been
precluded); Loesch v. State, 958 S.W.2d 830, 832 (Tex.Crim.App. 1997)("Because reasonable
suspicion is determined by the totality of the circumstances, an appellate court must look at all of
the facts together to make the reasonable suspicion determination; facts that do not show reasonable
suspicion in isolation may do so when combined with other facts."). We conclude Officer Saiz
presented articulable facts establishing reasonable suspicion to detain Appellant. Because the initial
detention was lawful, the trial court did not err in denying the motion to suppress. We overrule
Appellant's sole point and affirm the judgment of the trial court.



April 19, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. Appellant contends the trial court violated the United States Constitution, Fourth and Fourteenth
Amendments, the Texas Constitution article I, section 9, and the Texas Criminal Code of Procedure article 38.23. He
has not briefed his federal and state claims separately. Since he does not argue that his protection under the Texas
constitution exceeds that provided by the federal constitution, we will not address the state constitutional argument. 
Arnold v. State, 873 S.W.2d 27, 33 (Tex.Crim.App. 1993).