COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-141-CR

 

 

HAROLD DEWAYNE
FERGUSON                                                      APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

                FROM
THE 43RD DISTRICT COURT OF PARKER COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. Introduction

After
reserving his right to appeal the trial court=s
denial of his pretrial motion to suppress, Appellant Harold Dewayne Ferguson
pleaded guilty to a felony drug offense. 
He now appeals the denial of his motion to suppress.  We affirm.








II. 
Factual and Procedural Background

A
deputy sheriff found methamphetamine hidden in Ferguson=s
boot during a pat-down search after a stop for a traffic violation. The grand
jury indicted Ferguson for possessing at least four grams but less than two
hundred grams of methamphetamine with intent to deliver, enhanced with prior
felony convictions.  Ferguson filed a
motion to suppress, asserting that his detention, arrest, search, and seizure
violated the state and federal constitutions.

At
the pretrial hearing, Ferguson limited the scope of his motion to suppress:

Basically,
my motion=s going to be around
the initial stop.  And we=re not necessarily
contesting the reason for the stop, but for the B B I guess the
intrusion that was made during the stop. 

 

The
officer had Mr. Ferguson get out of the car. 
I think that=s the issue that we=re
going to be dealing with today, was whether or not he B B
that part of the seizure was going to be valid as per case law.

Deputy
Sheriff Luis Montanez, was the only witness at the hearing.  He testified that around 9:00 p.m. on July
26, 2008, while patrolling a rural part of the county, he saw a red Chevrolet
pickup truck approach an intersection and turn left without signaling.  He pulled in behind the truck and activated
his emergency lights.  Through the back
window of the pickup, Deputy Montanez saw the driver dip his right shoulder
down toward his leg area and thought he was going for a weapon.








The
driver, Ferguson, was the only person in the truck.  When he brought it to a stop, the deputy
approached and identified him by license and proof of insurance.  Deputy Montanez testified that Ferguson
seemed Avery
nervous@ and
that his responses to questions were unusual. 
For instance, when asked where he was going, Ferguson replied that he
was going to a friend=s house, although he could
not give an address despite claiming that he had known the friend for about
eight years.

Deputy
Montanez asked Ferguson to step out of the truck and stand between their two
vehicles while he ran his license for outstanding warrants. The process took
approximately four minutes. During that time, the deputy asked Ferguson if he
had any weapons on him.  Ferguson replied
that he had a pocket knife and began to reach inside his pants pocket.  Montanez asked him to keep his hands out of
his pockets and to turn around and put his hands behind his head so that he
could pat him down for officer safety. 
In so doing, the deputy retrieved the knife from Ferguson=s
pocket and continued to pat down the rest of his leg.  When he got to Ferguson=s
boot, he felt a Arather large@
bulge, which he thought might be a weapon. 
He pulled the pant leg up, revealing a partially unzipped black leather
case with a plastic bag hanging out. He inquired of the bag=s
contents, to which Ferguson replied that he did not know.








Deputy
Montanez asked if he could retrieve the bag and look inside. Ferguson said
yes.  Inside, the deputy found a glass
pipe and a crystal-like substance that looked like methamphetamine.  Ferguson was placed under arrest and into the
back of the patrol car.  Then, as
required by sheriff=s department policy, the
deputy conducted an inventory search of Ferguson=s
truck, whereupon he discovered another black case, another glass pipe, cash,
plastic bags, cell phones, and information the deputy referred to as Adope
notes.@

At the
end of the hearing, the trial court denied Ferguson=s
motion to suppress.  Ferguson
subsequently entered into a plea bargain agreement, and reserving his right to
appeal the denial of his motion to suppress, he pleaded guilty to possessing
less than a gram of methamphetamine with intent to deliver.  He also pleaded true to two of the indictment=s
enhancement paragraphs.  The trial court
accepted the terms of the plea bargain and sentenced Ferguson to thirty-eight
years=
confinement.  This appeal followed.

III. 
Discussion

Ferguson
concedes the validity of the initial traffic stop for failing to signal a left
turn.  In a single point, he complains of
the subsequent detention and searches, contending that the trial court erred by
denying his motion to suppress because Deputy Montanez had neither probable
cause nor reasonable suspicion to detain him or to search his person or his
truck.

A.  Standard of Review








We
review a trial court=s ruling on a motion to
suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total
deference to a trial court=s
rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, but we review
de novo application-of-law-to-fact questions that do not turn on credibility
and demeanor.  Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652B53
(Tex. Crim. App. 2002). The issue of whether a search is reasonable under our
state and federal constitutions is a question of law that we review de
novo.  Kothe v. State, 152 S.W.3d
54, 62 (Tex. Crim. App. 2004).

B.  Analysis

Although
Ferguson concedes that the officer had the right to issue a citation for a
traffic violation, he argues that there was no basis for the detention after
the stop, the pat-down search of his person, the search of the black case found
inside his boot, or the search of his vehicle.








1.  Detention Between the Stop and the Discovery
of Contraband  During
a traffic stop, an officer is authorized to ask the driver for identification,
a valid driver=s
license, information concerning ownership of the vehicle, proof of insurance,
and information concerning the destination and purpose of the trip.  Kothe, 152 S.W.3d at 63; Davis v.
State, 947 S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997); Caraway v. State,
255 S.W.3d 302, 307 (Tex. App.C
Eastland 2008, no pet.); Lambeth v. State, 221 S.W.3d 831, 836 (Tex.
App.CFort
Worth 2007, pet. ref=d).  The officer may also check for outstanding
warrants.  Kothe, 152 S.W.3d at
63; Caraway, 255 S.W.3d at 308. 
The process in this case lasted approximately four minutes.  We hold that this was reasonable and overrule
this part of Ferguson=s sole point.

2.  Pat-down Search for Weapons

It
is undisputed that Deputy Montanez performed a pat-down search on Ferguson. A
pat-down search is substantially less intrusive than a standard search
requiring probable cause.  O'Hara v.
State, 27 S.W.3d 548, 550B51
(Tex. Crim. App. 2000). Its purpose is officer safety.  Id. at 555.  A pat-down search for officer safety will be
justified only when the officer can point to specific and articulable facts
that reasonably lead him to conclude that the suspect might possess a weapon.  See Carmouche v. State, 10 S.W.3d 323, 329
(Tex. Crim. App. 2000).

Once
an officer has stopped a person, he may conduct a pat-down search for weapons
to maintain officer safety if he is justified in believing the person might be
armed.  Terry v. Ohio, 392 U.S. 1,
21, 27, 88 S. Ct. 1868, 1883 (1968); O'Hara, 27 S.W.3d at 550. 








Here,
there is no question that Ferguson was armed. 
As the officer was waiting for dispatch to return a warrant check on
Ferguson=s
license, he asked Ferguson if he had any weapons.  Ferguson admitted that he had a pocket
knife.  At that point, the only question
was to what degree was Ferguson armed. 
Deputy Montanez testified that he thought Ferguson had been retrieving a
weapon before he pulled him over because as he followed behind his truck in the
patrol car, he saw Ferguson=s
shoulder dip down toward his leg area. 
Moreover, once Ferguson admitted that he had a knife, Deputy Montanez
was justified in conducting a pat-down search for officer safety.  See O=Hara, 27
S.W.3d at 553.  Furthermore, he was
justified in conducting a thorough pat-down.  
See id. at 554.  Once an
officer conducting a pat-down search satisfies himself that a suspect has no
weapons, and the officer has no valid reason to further invade the suspect=s
personal security, then the corollary must be true also that until the officer
is satisfied that the suspect has no weaponsCor
in this case, no more weaponsChe
may continue the search.  See Stoker
v. State, 170 S.W.3d 807, 813 (Tex. App.CTyler
2005, no pet.); see also Worthey v. State, 805 S.W.2d 435, 438B39
(Tex. Crim. App. 1991).  

Accordingly,
we hold that Deputy Montanez=s
pat-down of Ferguson for officer safety was reasonable and that it therefore
comported with constitutional safeguards. 
See Terry, 392 U.S. at 27, 88 S. Ct. at 1883; O'Hara, 27
S.W.3d at 550. We overrule this part of Ferguson=s
sole point.

3.  Search of the Black Case in Ferguson=s
Boot

Deputy
Montanez retrieved the knife from Ferguson=s
pocket and continued patting down the rest of his leg.  When he felt the Arather
large@
bulge in Ferguson=s boot, he thought it
contained a weapon.  He pulled the pant
leg up and observed a partially unzipped black leather case with a plastic bag
hanging out.  He asked Ferguson what was
inside the bag, and Ferguson replied he did not know.  Montanez asked if he could retrieve the bag
and look inside. Ferguson said yes. 








Consent
to search is one of the well-established exceptions to the constitutional
requirements of both a warrant and probable cause.  See State v. Ibarra, 953 S.W.2d 242,
243 (Tex. Crim. App. 1997). The consent must be voluntary, and voluntariness is
a question of fact to be determined from all the circumstances.  Carmouche, 10 S.W.3d at 331.  To be voluntary, the consent must not be
coerced, by explicit or implicit means, by implied threat or covert force.  Id. 
The federal constitution requires the State to prove the voluntariness
of consent only by a preponderance of the evidence; the Texas constitution
requires the State to show by clear and convincing evidence that consent was
freely given.  See Ibarra, 953
S.W.2d at 243B45.  Because voluntariness of consent is an issue
of fact, we defer to the trial court=s
ruling if it is supported by the record. 
See Amador, 221 S.W.3d at 673; Estrada, 154 S.W.3d at 607.








The
only evidence in the record on the issue of Ferguson=s
consent for the deputy to search inside the bag found in his boot supports the
trial court=s
ruling.  Deputy Montanez testified that
Ferguson told him he did not know what was inside the bag in his boot and that
he answered yes when the deputy asked if he could look inside it.  There is no evidence to the contrary.  We hold, therefore, that the record is
sufficient to support the trial court=s
implied factual finding that Ferguson voluntarily consented to the search of
the bag.  See Chavarria v. State,
876 S.W.2d 388, 392 (Tex. App.CEl
Paso 1994, no pet.). Because Ferguson voluntarily consented to the search, we
hold as a matter of law that the search of the black bag was reasonable and
therefore satisfied constitutional standards. 
Accordingly, we overrule this part of Ferguson=s
sole point.

4.  Vehicle Search after Ferguson=s
Arrest

Police
may search a vehicle incident to a recent occupant=s
arrest if it is reasonable to believe that the vehicle contains evidence of the
offense of arrest. See Arizona v. Gant, 129 S. Ct. 1710, 1723 (2009); see
also Hill v. State, 303 S.W.3d 863, 874B76
(Tex. App.CFort
Worth 2009, pet. ref=d).  Once the deputy arrested Ferguson for
possessing contraband found on his person, it was reasonable for the deputy to
search for more contraband in the vehicle Ferguson was driving.  We overrule this part of Ferguson=s
sole point.

IV. Conclusion

Having
overruled each part of Ferguson=s
sole point, we affirm the trial court=s
judgment.

PER CURIAM

 

PANEL:
MCCOY, WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
May 20, 2010











[1]See Tex. R. App. P. 47.4.